**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| **MICHAEL PLIUSKAITIS, an individual,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **USA SWIMMING, INC. a foreign corporation, TERESA PLIUSKAITIS, an individual,** | **Case No.  2:15-cv-198-PMW** |
| **Defendants.** | **Chief Magistrate Judge Paul M. Warner** |

On May 27, 2015, all parties consented to having Chief United States Magistrate Judge Paul M. Warner conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is USA Swimming, Inc.'s ("USA Swimming" or "Defendant") motion to dismiss, or in the alternative, motion for summary judgment.[2]  On October 8, 2015, the court held a hearing on the motion.  At the hearing, Defendant was represented by Blaine J. Benard and Brent Rychener.  Michael Pliuskaitis ("Plaintiff") was represented by Aaron Gwilliam.  Before the hearing, the court carefully considered the motion, memoranda, and other materials submitted by the parties.  After considering the arguments of

---

[1] Dkt. no. 23.

[2] Dkt. no. 24.

counsel and taking the motion under advisement, the court renders the following Memorandum Decision and Order.

## BACKGROUND

This case involves Plaintiff; his former wife, Teresa Pliuskaitis ("Teresa"); and USA Swimming.[3]  While Plaintiff and Teresa were married, Teresa owned Snowbird Aquatics, Inc. ("Snow") in Virginia.[4]  For part of their marriage, Plaintiff was the head coach of Snow and a coach member of USA Swimming.[5]

USA Swimming is a service organization of at least 350,000 members whose purpose is to promote the culture of swimming by creating opportunities for swimmers and coaches to participate and advance in the sport through clubs, events, and education.[6]  USA Swimming is comprised of swimmers from age group level to the Olympic Team, as well as coaches and volunteers, with thousands of swimming clubs across the nation.[7]

Through the Ted Stevens Olympic and Amateur Sports Act ("Sports Act"), 36 U.S.C. §§ 220501 to 220529, Congress created the United States Olympic Committee ("USOC") to regulate amateur athletics and amateur sports organizations, including the Olympic and Pan-American Games.  *Shepherd v. U.S. Olympic Committee*, 464 F. Supp. 2d 1072, 1076 (D. Colo. 2006).  Under the Sports Act, the USOC "exercise[s] exclusive jurisdiction, directly or through constituent members of committees, over . . . all matters pertaining to United States participation

---

[3] While Plaintiff originally brought this action against both Teresa and USA Swimming, Teresa has since been dismissed from the case for lack of personal jurisdiction.  Dkt. no. 43.

[4] Dkt. no. 3 at 2.

[5] *Id.*

[6] Dkt. no. 24 at 2.

[7] *Id.*

in the Olympic Games."  36 U.S.C. § 220503(3)(A).  In addition, the USOC is "to provide swift

resolution of conflicts and disputes involving amateur athletics, national governing bodies, and

amateur sports organizations, and protect the opportunity of any amateur athlete, coach, trainer,

manager, administrator, or official to participate in amateur athletic competition."  *Id.* §

220503(8).

The USOC is responsible for selecting a National Governing Body ("NGB") for each

amateur sport.  *Id.* § 220521(a).  The USOC recognizes USA Swimming as the NGB for the

sport of swimming in the United States.[8]  As the NGB for swimming, USA Swimming has

various obligations under the Sports Act.  For instance, USA Swimming must provide "fair

notice and opportunity for a hearing" to any amateur athlete or coach before declaring an

individual ineligible to participate in amateur athletic competition.  *Id.* § 220522(a)(8).  Pursuant

to the Sports Act, USA Swimming promulgated Rules and Regulations that set forth its process

and rules for resolving complaints involving its members.

In January 2012, during the pendency of Plaintiff and Teresa's divorce, Plaintiff alleges

that Teresa sent an anonymous report to USA Swimming informing the organization that

Plaintiff had engaged in an inappropriate sexual relationship with a minor athlete ("V.M.").[9]

V.M. was fourteen years old when she began swimming with Snow in 2006, and she began

collegiate swimming at the University of Utah in August 2010.[10]

Based upon Teresa's report, USA Swimming filed a Petition with the National Board of

Review ("NBOR") alleging that Plaintiff had violated various sections of USA Swimming Code

---

[8] Dkt. no. 24 at 2.

[9] Dkt. no. 3 at 3.

[10] *Id.*

of Conduct ("Code").[11]  On June 19, 2012, the NBOR issued a Notice of Hearing ("Notice") for determining whether Plaintiff's membership in USA Swimming should be revoked.[12]  The Notice set forth the following sections of the Code Plaintiff allegedly violated:  (1) Section 304.3.7 of the 2010 and 2011 Codes, (2) Section 304.3.4 of the 2012 Code, (3) Section 304.3.8 of the 2012 Code, and (4) Section 305.1 of the 2012 Code.[13]  Each of these Codes strictly prohibits any sexual conduct, advances, or behavior directed toward an athlete by a coach member.[14]

The NBOR conducted an evidentiary hearing on August 1, 2012.[15]  On August 6, 2012, the NBOR issued its ruling and found that Plaintiff had violated sections 304.3.6 and 304.3.18 of the Code with respect to his relationship with V.M. from 2010 through May 2012.[16]  Based on this ruling, Plaintiff was permanently banned from membership in USA Swimming.[17]

On September 4, 2012, Plaintiff appealed that decision to the Board of Directors of USA Swimming.[18]  The Board of Directors affirmed the NBOR's decision in its entirety on February 11, 2013.[19]  The Board of Directors stated that the NBOR had found that Plaintiff violated Section 304.3.8 of the 2012 Code and Section 305.1 of the 2012 Athlete Protection Policies.[20]

---

[11] Dkt. no. 3 at 3-4; Dkt. no. 25 at 10.

[12] Dkt. no. 3 at 3-4; Dkt. no. 25 at 9.

[13] Dkt. no. 3 at 3-4; Dkt. no. 25 at 10.

[14] Dkt. no. 25 at 10.

[15] Dkt. no. 3 at 4; Dkt. no. 25 at 9.

[16] Dkt. no. 3 at 4; Dkt. no. 25 at 16.

[17] Dkt. no. 3 at 5; Dkt. no. 25 at 16.

[18] Dkt. no. 3 at 5; Dkt. no. 25 at 19.

[19] Dkt. no. 3 at 5; Dkt. no. 25 at 20.

[20] Dkt. no. 25 at 20.

On February 15, 2013, USA Swimming posted Plaintiff's name on the Individuals Permanently Suspended or Ineligible List, known as the "Banned for Life List" on its website.[21]  Next to each individual's name is a hyperlinked citation to the Code Sections that were allegedly violated.[22] Next to Plaintiff's name, USA Swimming published citations to Sections 304.3.5 of the 2010 Code of Conduct, 304.3.7 of the 2011 Code, 304.3.4 of the 2011 Code, and 304.3.8 of the 2012 Code.[23]  While Section 304.3.7 of the 2010 Code concerns the use of illegal drugs in the presence of an athlete by a coach, USA Swimming did not make that allegation in its petition or to the NGB.[24]  USA Swimming has acknowledged that there was a clerical mistake with regard to the specific Code provisions listed on its website.[25]

Plaintiff then filed an initial Demand for Arbitration dated July 22, 2013, and an Amended Demand for Arbitration dated January 10, 2014.[26]  In both his initial and amended arbitration demands, Plaintiff asserted that the decisions by the NBOR and the Board of Directors banning him for life was arbitrary or capricious and violated concepts of fundamental fairness.[27]  Plaintiff requested an order reinstating his membership in USA Swimming and lifting the ban imposed by USA Swimming, as well as an award of $75,000 in compensatory damages for "lost income, loss of reputation, and emotional distress."[28]

---

[21] Dkt. no. 3 at 6.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 5.

[26] Dkt. no. 25 at 25-49.

[27] *Id.*

[28] Dkt. no. 25 at 49.

The arbitration hearing took place on March 6-7, 2014.[29]  On March 26, 2014, the Arbitrator issued a decision in which she concluded that the NBOR's determination that Plaintiff violated the 2010 and 2011 Code Sections prohibiting sexual conduct between coaches and athletes was arbitrary and capricious.[30]  The Arbitrator noted that while Plaintiff had hugged and kissed V.M. in 2011, these actions do not constitute sexual conduct.[31]  The Arbitrator further concluded that the NBOR's determination that conduct occurring between Plaintiff and V.M. in 2012 violated the Code was likewise arbitrary and capricious: in 2012, V.M. was no longer a member of USA Swimming and Plaintiff was not a coach member with respect to her.[32]  The Arbitrator ordered USA Swimming "to remove [Plaintiff] from the banned list and to reinstate [him] to membership in the organization," and she required USA Swimming to pay the arbitration filing fees and expenses.[33]  The Arbitrator also denied Plaintiff's claim for compensatory damages, explicitly stating: "This Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein, including any claim for damages, are hereby denied."[34]

On March 27, 2014, USA Swimming removed Plaintiff's name from its list of permanently banned individuals on its website.[35]  Pursuant to Federal Arbitration Act, 9 U.S.C. § 12, an application to vacate or modify the award must have been filed no later than June 2014

---

[29] Dkt. no. 24 at 11.

[30] Dkt. no. 25 at 57.

[31] *Id.* at 59.

[32] *Id.*

[33] *Id.* at 60.

[34] *Id.*

[35] Dkt. no. 29 at 31; Dkt. no. 24 at 16.

(within three months from the date the award was delivered).  Neither Plaintiff nor USA Swimming sought judicial review or modification of the Arbitrator's decision.

In his Amended Complaint, Plaintiff asserts the following six claims against USA Swimming: defamation, breach of duty, violation of Sports Act, breach of contract, breach of good faith and fair dealing, and tortious interference.[36]  As to the claim for defamation, Plaintiff contends that USA Swimming's actions in placing him on the banned for life list, including the citations to incorrect Code Sections, has hurt his reputation.[37]  Plaintiff's other causes of action against USA Swimming rest on allegations that the NBOR hearing process violated USA Swimming's Rules and Regulations, USOC's Bylaws, and/or the Sports Act.[38]

In response to Plaintiff's lawsuit, USA Swimming filed the instant motion to dismiss and, in the alternative, a motion for summary judgment.[39]  USA Swimming argues that Plaintiff's amended complaint should be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff's claims for relief are preempted by the Sports Act and were already adjudicated in binding arbitration.[40]  USA Swimming also contends that Plaintiff's defamation claim was filed outside the applicable statute of limitations.[41]

**STANDARD OF REVIEW**

USA Swimming moves this court to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) or, in the alternative, under Rule 56(c).  However, because the court resolves USA

---

[36] Dkt. no. 3.

[37] *Id.*

[38] *Id.*

[39] Dkt. no. 24.

[40] *Id.*

[41] *Id.*

Swimming's motion to dismiss under Rules 12(b)(1) and 12(b)(6), it is unnecessary for the court to address its alternative motion for summary judgment.

Under Rule 12(b)(1), the court may dismiss a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction involves a court's authority to hear a given type of case" and the party invoking federal jurisdiction bears the burden of establishing that the court has subject matter jurisdiction. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Federal courts, unlike state courts, are courts of limited jurisdiction, possessing only that power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Motions to dismiss pursuant to Rule 12(b)(1) take two forms. First, a party may attack the complaint facially. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citations omitted). Second, a party may look beyond the complaint and challenge the factual basis upon which the plaintiff seeks to assert the court's subject matter jurisdiction. *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* A court may consider affidavits and other documents to ascertain whether it has subject matter jurisdiction without converting the motion to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063 (10th Cir. 2012) ("[W]hen considering a Rule 12(b)(1) motion to dismiss, a court may weigh the evidence and make factual findings.").

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court should "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  Thus, "the complaint must give the court reason to believe that this plaintiff has reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  "In evaluating a Rule 12(b)(6) motion to dismiss, a courts may consider not only the Complaint itself, but also attached exhibits, and documents incorporated into the Complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

## DISCUSSION

USA Swimming argues that Plaintiff's claims are barred under the Sports Act on the grounds that (1) USA Swimming created extensive dispute resolution procedures for the grievances of its members as required of all NGBs by the Sports Act; (2) there is no private right of action under the Sports Act; and (3) the Sports Act preempts state-law claims related to eligibility.  Alternatively, USA Swimming argues that Plaintiff's claims are subject to dismissal under res judicata and that the applicable statute of limitations bars Plaintiff's defamation claim.

In response, while Plaintiff recognizes that the Sports Act gives USA Swimming exclusive authority over the resolution of grievances regarding the eligibility of its members, Plaintiff contends that his state claims do not pertain to his eligibility, nor do they concern the United States' participation in the Olympics, Paralympics, or Pan-American Games.  Plaintiff further argues that USA Swimming failed to follow its own rules in determining his eligibility, and, as such, the Sports Act does not preempt his state-law claims against USA Swimming.  He also asserts that because he could not bring all of his claims in arbitration, res judicata does not apply.  Lastly, Plaintiff contends that he timely filed his defamation claim and therefore it is not barred by the statute of limitations.  The court will address each of the parties' arguments in turn.

## I.      Rule 12(b)(1) Motion to Dismiss

### A.  Sports Act

Through the Sports Act, Congress granted the USOC and its NGBs exclusive jurisdiction "over . . . all matters pertaining to United States participation in the Olympic Games."  36 U.S.C. § 220503(3)(A).  As part of that exclusive authority, USOC is required "to provide swift resolution of conflicts and disputes involving amateur athletics, national governing bodies, and amateur sports organizations, and protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition."  *Id.* § 220503(8).

While the Sports Act specifically provides that the USOC (and thus its NGBs like USA Swimming) may sue and be sued in federal court, it also expressly negates the establishment of a private right of action.  *Id.* § 220505(b)(9) ("[N]either this paragraph nor any other provision of [the Sports Act] shall create a private right of action under this chapter . . . .").  Thus, as noted in

*Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004), "the USOC may be sued only with respect to matters not arising under the Amateur Sports Act, such as, for example, with respect to a dispute over a lease that the USOC may have signed with the landlord of its offices." *Id.* at 1257. Accordingly, the question is whether Plaintiff's claims against USA Swimming arise under the Sports Act.

In *Slaney v. International Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001), the plaintiff, athlete Mary Decker Slaney, had tested positive for a prohibited substance after participating in the Olympic track and field trials. *Id.* at 586. After exhausting her administrative remedies, Slaney filed suit in federal court claiming that she suffered damages by the "unlawful manner in which the USOC conducts its doping program." *Id.* at 596. The Seventh Circuit, however, affirmed the dismissal of Slaney's state-law claims for lack of subject matter jurisdiction. *Id.* In particular, the court stated, "Slaney cannot escape the fact that her state-law claims, whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the method by which the USOC determines eligibility of athletes," and thus are preempted by the Sports Act. *Id.* Additionally, the court noted that Slaney's complaint avoided "any mention of the fact that her damages arise from the USOC's determination regarding her eligibility," which the court assumed was Slaney's tacit acknowledgment that the USOC has exclusive jurisdiction to determine all eligibility matters, including those set forth in her state-law claims. *Id.*

Similarly, in *Cantrell v. United States Soccer Federation*, 924 P.2d 789 (Okla. App. 1996), a suspended youth soccer coach alleged that the NGB for the sport of soccer conducted a hearing in violation of its rules and regulations. *Id.* at 790. Cantrell brought claims for breach of

contract and tortious interference with rights.  *Id.*  In affirming the trial court's dismissal of his

action, the court stated: "Although Cantrell purports to assert his claims in tort, it is clear from

reading his Petition as a whole that he effectively seeks a further appeal of the administrative

determinations made by Appellees under the authority of the [Sports] Act . . . . [He] does not

allege separate tortious acts which are outside the scope of that administrative scheme."  *Id.* at

792.

Likewise, the court in *Graham v. United States Anti-Doping Agency*, No. 5:10-CV-194-F,

2011 WL 1261321 (E.D. N.C. Mar. 31, 2011), stated the following:

> [A]lthough Graham has *labeled* his claims as violations under the Constitution and the
> state law of slander, his claim undoubtedly challenges his eligibility to participate as a
> coach to amateur Olympic athletes.  As eligibility determinations fall within the exclusive
> parameters of the Amateur Sports Act, this court lacks jurisdiction to hear Graham's
> claims.

*Id.* *5.

Like *Slaney*, *Cantrell*, and *Graham*, each of Plaintiff's claims at their core challenges

USA Swimming's revocation of his eligibility to coach.  While Plaintiff did not move to modify

the Arbitrator's ruling, Plaintiff essentially seeks further appeal of the determinations made in the

administrative process.

Courts intervening in eligibility determinations have uniformly determined that judicial

intervention should occur only in extremely limited circumstances.  For instance, the court in

*Harding v. United States Figure Skating Association*, 851 F. Supp. 1476 (D. Or. 1994),

prohibited the U.S. Figure Skating Association ("USFSA") from conducting a disciplinary

hearing against Harding because it had breached its own rules in the process.  *Id.* at 1479.

Although the USFSA bylaws require that it hold disciplinary hearings on a mutually convenient

date for all parties, USFSA scheduled Harding's hearing with very short notice to her.  *Id.*  The court intervened and concluded that by setting the hearing without providing Harding sufficient time to prepare a defense, USFSA breached its own bylaws.  *Id.*  The court noted that this was "one of those rare cases where judicial intervention was appropriate." *Id.*  The court further explained that

> courts should rightly hesitate before intervening in disciplinary hearings held by private associations, including the defendant [USFSA].  Intervention is appropriate only in the most extraordinary circumstances, where the association has clearly breached its own rules, that breach will imminently result in serious and irreparable harm to the plaintiff, and the plaintiff has exhausted all internal remedies.  Even then, injunctive relief is limited to correcting the breach of the rules. The court should not intervene in the merits of the underlying dispute.

*Id.*  Thus, because it was evident that the USFSA had breached its own bylaws that hearings be "reasonably convenient for all parties" and Harding would imminently suffer serious and irreparable harm, the court enjoined USFSA from holding the disciplinary hearing until a later date. *Id.*

Likewise, in *Lee*, the plaintiff, a coach for the United States Olympic Taekwondo Team, lost his coaching job. *Lee*, 331 F. Supp. 2d at 1254.  Two weeks prior to the 2004 Summer Olympics, Lee filed suit in federal court seeking reinstatement and damages arguing that he was fired because he was of Korean descent. *Id.*  In addition to his discrimination claim under 42 U.S.C. § 1981, Lee brought state-law claims for ultra vires activity, breach of contract, breach of implied contract, and interference with contract. *Id.* at 1257.  However, the court dismissed Lee's state-law claims because they "essentially seek reinstatement of Lee as the coach of the 2004 United States Olympic Taekwondo Team . . . . [and] are therefore akin to a challenge to eligibility determinations under the Amateur Sports Act." *Id.* at 1257.  However, the court did

not dismiss Lee's 42 U.S.C. § 1981 claim, concluding that the Sports Act "does not nullify or supersede other *federal* laws that provide private rights of action to ensure freedom from discrimination." *Id.* at 1260 (emphasis added).  Thus, the *Lee* court made a distinction between claims arising under federal anti-discrimination statutes and state-law claims addressing eligibility.

Similarly, in *Shepherd v. U.S. Olympic Committee*, 464 F. Supp. 2d 1072 (D. Colo. 2006), the plaintiff, a wheelchair athlete, brought suit under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") against the USOC for its "failure to provide him with the services, benefits and financial and other support routinely provided to his Olympic counterparts." *Id.* at 1075.  The USOC moved to dismiss arguing that Shepherd's discrimination claims were "actually challenges to the method and reasoning by which the USOC decides to allocate its limited resources to numerous different athlete classes under its jurisdiction and therefore with the USOC's exclusive jurisdiction." *Id.* at 1087 (internal citations omitted).  The court rejected the USOC's argument and concluded that the Rehabilitation Act's and the ADA's protections were not preempted by the Sports Act.  *Id.* at 1088-89.  While the court emphasized that the case presented "an exceedingly close call" under the relevant case law, it nevertheless concluded that Shepherd's allegations of discrimination did not fall within the exclusive jurisdiction of the USOC "given the predominate mandates of the ADA to call out and remedy disability-based discrimination." *Id.* at 1088.

In the instant case, Plaintiff attempts to tailor his complaint to fit within the framework of *Harding*, *Lee*, and *Shepherd*.  Like *Harding*, Plaintiff asserts that USA Swimming breached its own rules in determining his eligibility to coach.  However, Plaintiff provides only vague and

conclusory allegations regarding USA Swimming's alleged breach, which are not sufficient to establish this court's jurisdiction.  Plaintiff has not set forth the specific rules that USA Swimming allegedly breached; rather, Plaintiff simply disagrees with USA Swimming's determination regarding his eligibility.  Furthermore, even assuming Plaintiff had identified specific rules, he has not demonstrated that USA Swimming's alleged breach will imminently result in serious and irreparable harm to him.

Moreover, Plaintiff argues that his claims are akin to those asserted in *Lee* and *Shepherd* and therefore fall outside the exclusive authority given to USA Swimming.  However, the courts in *Lee* and *Shepherd* determined that the Sports Act does not preempt federal statutes prohibiting race and disability discrimination.  Both courts held that the Sports Act does not preempt a separate federal law "where the two statutes may be reconciled."  *See Shepherd*, 464 F. Supp. 2d at 1088.  Here, by contrast, Plaintiff does not assert any claim or right under any federal statute other than the Sports Act; his claims all arise from state law.  The *Lee* court held that the Sports Act preempted Lee's state law claims for ultra vires, breach of contract, breach of implied contract, and interference with contract because the claims "sound in state law" and "challenge the method by which Lee was removed as coach and another person was named as coach . . . . [Accordingly,] Lee has no right to bring such a challenge in court."  *Lee*, 331 F. Supp. 2d at 1257.  Like *Lee*, Plaintiff's claims sound in state law and challenge USA Swimming's determination regarding Plaintiff's eligibility to coach.  Thus, Plaintiff's reliance upon *Lee* is misplaced as it actually supports the dismissal of Plaintiff's complaint for lack of subject matter jurisdiction.

Plaintiff's contention that the Sports Act does not preempt his claims because he seeks damages is also without merit.  Other courts have dismissed similar state-law damage claims for lack of jurisdiction pursuant to the Sports Act.  *See Slaney*, 244 F.3d at 596 (dismissing the plaintiff's damage claims for breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, and negligent misrepresentation); *Graham*, 2011 WL 1261321, at *1 (dismissing damages claim for slander); *Lee*, 331 F. Supp. 2d at 1257 (dismissing damage claims for breach of contract and interference with contract); *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F.Supp. 1537, 1539-40 (S.D. W.Va. 1993) (dismissing the plaintiff's damage claims for libel, slander, intentional interference with business relationships, and negligence); *Cantrell*, 924 P.2d at 790 (dismissing the plaintiff's damage claims for tortious breach of contract and tortious interference).  In each of these cases, the respective courts held that the state-law damage claims were preempted by the exclusive dispute resolution procedures established by the Sports Act.

Based on the foregoing, this court concludes that Plaintiff is not entitled to a judicial remedy for his state-law claims.  To rule otherwise would conflict with, and frustrate, Congress' intent that the Sports Act gives exclusive jurisdiction over eligibility issues to the USOC and NGBs.  *See Barnes*, 862 F. Supp. at 1544 ("Congress made clear choices to keep disputes regarding the eligibility of amateur athletes to compete out of the federal courts.").  Allowing coaches or athletes to litigate eligibility in court under the common law of each state would likewise conflict with a principal purpose of the Sports Act: establishing uniform eligibility standards and a comprehensive mechanism for the prompt resolution of disputes outside the judicial process.  *See Walton-Floyd v. United States Olympic Comm.*, 965 S.W. 2d 35, 40 (Tex. App. 1998) ("To hold a common law duty exists outside the scope of the [Sports] Act, thereby

16

enabling an individual athlete to bring suit, threatens to override the intent of Congress and open the door to inconsistent interpretations of the [Sports Act].").  Plaintiff's claims are exactly the type that the Sports Act was designed to address though the rules and regulations set forth by the NGBs of each amateur sport.  Accordingly, this court concludes that Plaintiff's claims for breach of duty, breach of contract, breach of good faith and fair dealing, and tortious interference go to the heart of his eligibility to coach and are thus preempted by the Sports Act.[42]

## II.      Rule 12(b)(6) Motion to Dismiss

### A.  Res Judicata

In the alternative, this court concludes that Plaintiff's claims are barred by the doctrine of res judicata.  In the Tenth Circuit, res judicata or claim preclusion applies when three elements exist: (1) a final judgment on the merits in a prior action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits.  *Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2003).  If these elements are satisfied, res judicata is proper unless the party seeking to avoid preclusion did not have a "full and fair opportunity" to litigate the claim in the previous action.  *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999).

As conceded by Plaintiff, the first two elements of claim preclusion are met:  (1) the Arbitrator's award was a final judgment on the merits and (2) the parties are identical.  Plaintiff

---

[42] The Middle District of Tennessee recently issued a decision in a similar case.  *See Walker v. USA Swimming, Inc.*, No. 3:16-0825, 2017 WL 782970 (M.D. Tenn. Mar. 1, 2017).  In *Walker*, the court denied the defendant's motion to dismiss for lack of subject matter jurisdiction, concluding that the plaintiff had demonstrated that his case falls within the very narrow exception for judicial intervention in eligibility matters.  Unlike Plaintiff's Amended Complaint, in the petition to vacate the arbitration award in *Walker*, the plaintiff had very clearly alleged the rules and regulations that the arbitrator failed to follow, specifically citing to a due process checklist.  While this court is not bound by the decision from a district court in Tennessee, the instant case is distinguishable from *Walker*, as noted above.

argues that the third element has not been satisfied because the Arbitrator did not address his claims for defamation, breach of duty, breach of contract, breach of good faith and fair dealing, and tortious interference.  In addition, Plaintiff asserts that procedural limitations deprived him of a full and fair opportunity to resolve his claims in arbitration.

This court concludes that Plaintiff's claims for breach of duty, breach of contract, breach of good faith and fair dealing, and tortious interference all relate to USA Swimming's determination of his eligibility as a coach member of USA Swimming.  As discussed above, like the plaintiff in *Slaney*, Plaintiff "cannot escape the fact that [his] state-law claims, whether framed as breach of contract, . . . breach of fiduciary duty,"  breach of good faith and fair dealing, or tortious interference, "are actually challenges to the method by which [USA Swimming] determines eligibility."  *Slaney*, 244 F.3d at 596; *see also Lee*, 331 F. Supp. 2d at 1257 (dismissing the plaintiff's state-law claims for breach of contract and interference with contract because they "challenge the method by which Lee was removed as coach and another person was named as coach"); *Graham*, 2011 WL 1261321 at *5 (noting that although the plaintiff "labeled his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes").

Because Plaintiff's claims in this case arise out of "the same transaction, or series of connected transactions" as his claims asserted in arbitration, they are barred by the doctrine of res judicata.  *Yapp*, 186 F.3d at 1227.  Furthermore, Plaintiff had a full and fair opportunity to resolve his claims in arbitration.  He simply disagrees with the Arbitrator's decision not to award damages to him.

### B. Defamation

Plaintiff alleges that on February 15, 2013, USA Swimming published a false statement on its website that Plaintiff was banned for life from coaching swimming, in part, because he used drugs in an athlete's presence.  USA Swimming acknowledged that there was a clerical error with regard to the citation to that Code Section.  After arbitration, USA Swimming removed Plaintiff from the Banned for Life List on its website on March 27, 2014.  On March 25, 2015, Plaintiff brought the instant lawsuit, alleging that USA Swimming defamed him by citing to that incorrect Code Section.

The parties agree that under Utah law, a claim for defamation must be brought within one year.  Utah Code Ann. §78B-2-302 ("An action may be brought within one year . . . for libel [or] slander.").  In defamation cases, the one-year statute of limitations does not begin to run until the defamatory statement "is known or is reasonably discoverable by the plaintiff."  *Allen v. Ortez,* 802 P.2d 1307, 1314 (Utah 1990).  Plaintiff argues that the continuing tort doctrine tolled the statute of limitations for his defamation claim.  *See Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 56, 235 P.3d 730 ("The continuing tort doctrine . . . [tolls] the statute of limitations while the tortious conduct continues unabated.").  The court disagrees.

In Utah, where an allegedly defamatory statement is published in a manner widely available to the public, the one-year statute begins to run on the date of first publication.  *See Russell v. Standard Corp.*, 898 P.2d 263, 264 (Utah 1995).  Under what is known as the "single publication rule, . . . . the aggregate communication can give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred."  *Oja v. U.S. Army*

*Corps of Eng'rs*, 440 F.3d 1122 (9th Cir. 2006).  While the Utah Supreme Court has not considered whether the defamation statute of limitations applies to alleged defamatory statements posted on the Internet, "other jurisdictions faced with the same issue have uniformly extended the single publication rule to Internet publications."  *Diamond Ranch Academy, Inc. v. Filer*, No. 2:14-CV-751-TC, 2016 WL 633351, *8 (D. Utah Feb. 17, 2016) (citing cases); *see also Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013) ("Every state court that has considered the question applies the single-publication rule to information online.").  This court believes that the Utah Supreme Court will likely follow suit.

Thus, in the instant case, the one-year statute of limitations began to run in February 2013 and it expired in February 2014.  Because Plaintiff did not file suit until March 25, 2015, his defamation claim was not filed until over one year after the statute of limitations expired. Consequently, this court concludes that Plaintiff's claim for defamation was untimely as he filed his complaint outside the one-year statute of limitations.  As such, Plaintiff's defamation claim fails as a matter of law.

## CONCLUSION

Based on the foregoing, USA Swimming's motion to dismiss is **GRANTED**. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Amended Complaint is dismissed in its entirety.

DATED this 10th day of March, 2017.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge